**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**CASE NO. 21-60006-CR-ALTMAN**

**UNITED STATES OF AMERICA**,

    *Plaintiff,*

*v.*

**JOSEPH A. SANFILIPPO**,

    *Defendant.*

_____/

## <u>ORDER</u>

At the outset of a pandemic that would go on to kill more than 762,000 Americans, our Court suspended all grand jury proceedings. While this moratorium was still in effect, the Government faced a Hobson's choice when it came to defendants—like Joseph Sanfilippo—who had committed their crimes *almost* five years earlier: it could *either* allow the five-year statute of limitations to expire (which would mean absolving these defendants of their crimes) *or* it could commence a criminal prosecution, before the window closed, by *instituting*[1] an information—with the understanding that, as soon as the grand jurors returned, it would dismiss the information and get its indictment. Unsurprisingly, the Government chose the latter course: it charged Sanfilippo by information and, once the grand jury reconvened, indicted him.

But (and here's the rub) Sanfilippo never waived his right to have his case presented to a grand jury—a right enshrined in *both* the Fifth Amendment to the U.S. Constitution *and* Rule 7 of the Federal Rules of Criminal Procedure. This wouldn't be such a big deal—except that, while the information was pending (and before our Court brought the grand jurors back), Sanfilippo's statute of limitations expired. Contending that the Government worked a clever—if illegal—end-run around his rights,

---

[1] Much more on this interesting (and, at least here, all-important) word below.

Sanfilippo has moved to dismiss the indictment. *See* Motion to Dismiss the Indictment (the "Motion") [ECF No. 9].[2] We disagree and now **DENY** his Motion.

## BACKGROUND

On March 11, 2020, with infections skyrocketing, the World Health Organization declared the Covid-19 outbreak a global pandemic. *See* Proclamation No. 9994, 85 Fed. Reg. 16337 (Mar. 18, 2020) (noting the WHO's declaration). Two days later, the President of the United States declared a national emergency. *Id.* That same day, the Honorable K. Michael Moore, then-Chief Judge of our Court, entered the first in a series of administrative orders regarding the pandemic. That first order continued jury trials in the Southern District of Florida through March 30, 2020 "in order to protect the public health[ ] and . . . to reduce the size of public gatherings and reduce necessary travel." Order Concerning Jury Trials and Other Proceedings, Administrative Order 2020-18 (S.D. Fla. Mar. 13, 2020).[3] It also specified that "[t]he time period of any continuance entered as a result of th[e] order shall be excluded under the Speedy Trial Act, . . . as the Court finds that the ends of justice served by taking that action outweigh the interests of the parties and the public in a speedy trial." *Id.* at 1–2.

About two weeks later, Chief Judge Moore suspended all grand jury sessions in the Southern District of Florida. *See* Order Concerning Grand Jury Sessions, Administrative Order 2020-22 (S.D. Fla. Mar. 26, 2020). He ultimately extended the moratorium on grand jury proceedings several more

---

[2] The Motion is ripe for resolution. *See* Government's Response in Opposition to Defendant's Motion to Dismiss ("Response") [ECF No. 10]; Defendant's Reply to Government's Response to His Motion to Dismiss Indictment for Violation of Statute of Limitations ("Reply") [ECF No. 11]; *see also* Government's Supplemental Briefing Regarding Defendant's Motion to Dismiss ("Government's Supplemental Brief") [ECF No. 17]; Defendant's Supplemental Brief [ECF No. 18].

[3] The Court's administrative orders relating to the COVID-19 pandemic can be found at https://www.flsd.uscourts.gov/administrative-orders-relating-covid-19.

times[4]—until, on November 17, 2020, we (as a court) reconvened the grand juries. *See* In re: Partial Sequestration of Grand Jurors, Administrative Order 2020-87 (S.D. Fla. Nov. 16, 2020) (resuming grand jury proceedings on November 17, 2020).

About a month earlier, on October 23, 2020, the Government charged Sanfilippo by information with four counts of wire fraud, in violation of 18 U.S.C. § 1343, and four counts of "structuring," in violation of 31 U.S.C. § 5234. *See* Information, *United States v. Sanfilippo*, No. 20-cr-60112-WPD (S.D. Fla. Oct. 23, 2020), ECF No. 1.[5] According to the Information, Sanfilippo committed the four acts of wire fraud between October 28, 2015 and November 2, 2015, and he perpetrated the four acts of structuring between October 29, 2015 and November 4, 2015. *See generally id.*; *see also* Motion at 1–2. It's therefore undisputed that the Government filed the Information *before* the five-year statute of limitations expired.

As we've said, the grand jury reconvened on November 17, 2020, and the Government finally indicted Sanfilippo—on those same eight counts—on January 14, 2021. *See* Indictment [ECF No. 1].[6] It's thus undisputed that the Government indicted Sanfilippo *more* than five years after he'd committed the crimes that are charged in the Indictment. With that Indictment in hand, the Government asked Judge Dimitrouleas to dismiss Sanfilippo's Information *without prejudice* under Rule 48(a)—a request Judge Dimitrouleas promptly granted. *See* Order of Dismissal, *United States v. Sanfilippo*, No. 20-cr-60112-WPD (S.D. Fla. Feb. 26, 2020), ECF No. 5.

---

[4] *See* Third Order Concerning Jury Trial and Other Proceedings, Administrative Order 2020-24 (S.D. Fla. Apr. 3, 2020); Fourth Order Concerning Jury Trial and Other Proceedings, Administrative Order 2020-33 (S.D. Fla. May 31, 2020); Fifth Order Concerning Jury Trial and Other Proceedings, Administrative Order 2020-41 (S.D. Fla. June 29, 2020); Sixth Order Concerning Jury Trial and Other Proceedings, Administrative Order 2020-53 (S.D. Fla. Aug. 11, 2020); Seventh Order Concerning Jury Trial and Other Proceedings, Administrative Order 2020-76 (S.D. Fla. Oct. 20, 2020).

[5] The Clerk of Court assigned that case to Judge Dimitrouleas.

[6] The Clerk docketed the Indictment as a new case and assigned it to us.

ANALYSIS

Sanfilippo now moves to dismiss the Indictment, claiming that, by the time he was indicted, the five-year statute of limitations for non-capital offenses had run. *See* Motion at 2 (citing 18 U.S.C. § 3282(a)). In denying his Motion, we address the following three questions: (1) whether the Government satisfied the strictures of § 3282 when, without Sanfilippo's consent, it filed the Information; (2) whether the Indictment was timely under the standard set out in 18 U.S.C. § 3288; and (3) whether the Government's (alleged) pre-indictment delay justifies a dismissal or requires an evidentiary hearing.

## I.   THE STATUTE OF LIMITATIONS

Federal law provides that "no person shall be prosecuted, tried, or punished for any offense, not capital, unless the indictment is found or the information is *instituted* within five years next after such offense shall have been committed." 18 U.S.C. § 3282(a) (emphasis added). And, as Sanfilippo notes, Rule 7 requires that a felony "be prosecuted by an indictment" unless "the defendant—in open court and after being advised of the nature of the charge and of the defendant's rights—waives prosecution by indictment[.]" FED. R. CRIM. P. 7(a), (b); *see also* U.S. CONST. amend. V ("No person shall be held to answer for a capital, or otherwise infamous crime, unless on a presentment or indictment of a grand jury[.]"). In other words, a defendant can be charged by information *only* if he waives his right to be charged by indictment. FED. R. CRIM. P. 7(b). The question, then, is whether the Government satisfied the statute of limitations when, without Sanfilippo's consent, it charged him by information.

The Seventh Circuit tackled this issue more than twenty years ago in *United States v. Burdix-Dana*, 149 F.3d 741 (7th Cir. 1998), where the parties asked the court to consider "whether filing an information with the district court is sufficient to 'institute' the information as that language is used in the statute of limitations"—and, if so, "whether the subsequent filing of the indictment and

4

dismissal of the information after the period of limitations had run satisfy the statute of limitations," *id.* at 742. In that case, as here, the defendant argued that an information wasn't "institute[d]" within the meaning of § 3282(a) unless (1) the defendant waived his right to grand jury and (2) the government filed the information *before* the five-year window closed. *Id.* (noting the defendant's position that "an information is not 'instituted' until the defendant has waived her right to an indictment and the prosecution may proceed on the information").

The Seventh Circuit disagreed. It recognized that, without a proper waiver, the district court couldn't accept the defendant's guilty plea or preside over his trial. *Id.* (citing FED. R. CRIM. P. 7(b)). But it found nothing in the relevant statutes—or Rule 7—that would render a waiver-less information "a nullity." *Id.* Rule 7(b), the court explained, nowhere prohibits the government from *filing* a waiver-less information; "it simply establishes that *prosecution* may not proceed without a valid waiver." *Id.* Rule 7, moreover, doesn't "affect[ ] the statute governing the limitation period," as "there is nothing in the statutory language of 18 U.S.C. § 3282 that suggests a *prosecution* must be instituted before the expiration of a five year period; instead the statute states that the information must be *instituted*." *Id.* at 742–43. Concluding that "the filing of the information is sufficient to institute it within the meaning of 18 U.S.C. § 3282," the Seventh Circuit affirmed the district court's denial of the defendant's motion to dismiss. *Id.* at 743.

And nearly every court that has interpreted § 3282 agrees with *Burdix-Dana. See United States v. Rosecan*, 2021 WL 1026070, at *3–4 (S.D. Fla. Mar. 17, 2021) (Ruiz, J.) ("fully adopt[ing]" the "logic of the Seventh Circuit in *Burdix-Dana* [ ] because it is grounded in the plain language of section 3282" and noting that "the majority of federal district courts to confront this question have reached a similar conclusion"); *see also United States v. Webster*, 2021 WL 4952572, at *4 (S.D. Fla. Sept. 27, 2021) (Torres, Mag. J.), *report and recommendation adopted*, 2021 WL 4949170 (S.D. Fla. Oct. 25, 2021) ("We therefore follow the Seventh Circuit's decision in *Burdix-Dana*. This is because the plain language of § 3282 only

requires that the 'information' be 'instituted' to satisfy the statute of limitations. The terms 'prosecuted' and 'instituted' are not equivalent, and an information is 'instituted' when it is properly filed, regardless of the defendant's waiver."); *United States v. Briscoe*, 2020 WL 5076053, at *2 (D. Md. Aug. 26, 2020) (explaining that § 3282 requires only that an information be "instituted" and noting that the words "prosecuted" and "instituted" "are not equivalent"); *United States v. Rothenberg*, 2021 WL 4704583, at *3 (N.D. Cal. Aug. 13, 2021) ("The Court concludes that the text of Section 3282(a) supports holding that an information can be instituted when it is filed. . . . [T]he language of Section 3282(a) refers to instituting an 'information,' not a 'prosecution.' According to the plain meaning of the word 'institute,' an information is instituted when it comes into being (i.e., is filed).").

We agree with the majority view. After all, § 3282 requires only that an information be "instituted"—a word Webster's defines as "caus[ing] to come into existence." WEBSTER'S NEW INTERNATIONAL DICTIONARY (3d ed. 1993). Consider this straightforward definition in contradistinction to a different verb that appears in the same sentence of our statute of limitations— the verb "prosecute[ ]," which means "[t]o institute *and* pursue a criminal action against (a person)." BLACK'S LAW DICTIONARY (11th ed. 2019) (emphasis added). As these very different definitions make plain, "institute" connotes the birth of something, whereas the more capacious "prosecute" implies a continuum: from the birth of the case (when the information or indictment is instituted) through the pendency of its life (the litigation). It is, admittedly, awkward to say that an information—a kind of document—can be "instituted." Normally, we'd say that a document has been drafted, edited, filed, or read. But an information isn't just any old piece of paper. As a document that carries with it the imprimatur of the United States, its existence can be traced to a fixed moment in time—the moment in which it was filed. That's because at that moment—and not before—the information "come[s] into existence."

Although (as we've said) most courts agree with this view, at least one judge hasn't. *See United States v. Machado*, 2005 WL 2886213, at *2 (D. Mass. Nov. 3, 2005). In *Machado*, the district court concluded that the terms "institute" and "prosecute" are synonymous, at least in the criminal context, because "[b]oth words are commonly used to describe the commencement of a criminal action." *Id.* But this interpretation—which Sanfilippo regurgitates here—improperly focuses on a single word at the expense of the entire phrase. It's true, of course, that the government *can* institute proceedings— just as it *can* institute a prosecution. The problem is that the statute lists neither of those nouns as the object of the crucial verb "instituted." Instead, as we've seen, the statute addresses itself only to the critical, life-breathing moment in which the "*information* is instituted." *Machado*, in other words, inappropriately adds a requirement that doesn't exist in the statute. *See* A. SCALIA & B. GARNER, READING LAW: THE INTERPRETATION OF LEGAL TEXTS 93 (2012) [hereinafter SCALIA & GARNER] ("Nothing is to be added to what the text states or reasonably implies (*casus omissus pro omisso habendus est*). That is, a matter not covered is to be treated as not covered."). That's reason enough to disregard *Machado*'s holding.

Recognizing this textual lacuna, *Machado* pivoted to rule-making: "an information is the functional and constitutional equivalent of an indictment," it concluded, "only when accompanied by a valid waiver of indictment, [and] *no reason exists why that rule should not apply in the statute of limitations context*." *Machado*, 2005 WL 2886213, at *2 (emphasis added). But, as we've explained, there *is* a very good reason for it: Congress—the collection of men and women elected to make the laws of our country—decided *not* to include that requirement in the statute. And that's really the end of that. *See United States v. DBB, Inc.*, 180 F.3d 1277, 1281 (11th Cir. 1999) ("The starting point for all statutory interpretation is the language of the statute itself."); SCALIA & GARNER at 93; *see also id.* at 56 ("The words of a governing text are of paramount concern, and what they convey, in their context, is what the text means.").

Judge Middlebrooks (of our Court) provided a more compelling critique of *Burdix-Dana* in *United States v. BGG*, Case No. 20-cr-80063-DMM (S.D. Fla. Jan. 1, 2021), ECF No. 19 ("*BGG*"). In that case, Judge Middlebrooks tried to divine the meaning of the word "instituted" as it would have been understood in 1790—when Congress passed the original statute of limitations. That statute has been revised several times through the centuries, but it was (as Judge Middlebrooks correctly noted) the predecessor to our § 3282. And, like our current version, the original statute used the verb "instituted" in describing the act of filing an information. *See* Crimes Act of 1790, ch. 9, § 32, 1 Stat. 112, 119 ("[N]or shall any person be prosecuted, tried or punished for any offence, not capital, nor any fine or forfeiture under any penal statute, unless the indictment or *information* for the same shall be found or *instituted* within two years from the time of committing the offence." (emphases added)). Noting that the 1790 statute was enacted long before our Federal Rules of Criminal Procedure were promulgated, Judge Middlebrooks pointed out that Congress, in 1790, "could not have intended that an instituted information be one that comports with Rule 7 of the Federal Rules of Criminal Procedure because that Rule did not yet exist." *Id.* at 12–13. Judge Middlebrooks also found that the settled practice before 1790 was to "limit[] prosecution by information to misdemeanors and petty offenses." *Id.* at 16. Because "the legal concept of a defendant accused of a felony waiving his constitutional right to prosecution by grand jury indictment" didn't exist until 1946, Judge Middlebrooks concluded that, in 1790, an "instituted" information *couldn't* have included the yet-to-be-invented waiver-less information. *Id.* In Judge Middlebrooks's view, then, the waiver-less information the government filed during the pandemic—before the statute of limitations expired—was a kind of legal nullity that failed to satisfy the statute of limitations. *Id.* at 19–20. Judge Middlebrooks thus granted the government's request to dismiss its waiver-less information. *Id.* But he did so *with* prejudice. *Id.*

Although interesting and well-researched, *BGG* misses its mark in a few salient ways. For one, it focuses entirely on the statute's *context* without ever delving directly into its text. And, as in most

cases, the text disposes of the issue here.[7] The great Dr. Johnson's dictionary from 1785—just five years before Congress enacted the original version of our statute of limitations—defined "institute" as "to establish" or "enact." 1 SAMUEL JOHNSON, A DICTIONARY OF THE ENGLISH LANGUAGE (6th ed. 1785) (defining "institute" as "to fix; to establish; to appoint; to enact; to settle; to prescribe"). And that meaning seems to have remained fixed throughout the early American period. *See* NOAH WEBSTER, AN AMERICAN DICTIONARY OF THE ENGLISH LANGUAGE (1st ed. 1828) (defining "institute" as "[t]o establish; to appoint; to enact; to form and prescribe," "[t]o found; to originate and establish," and "[t]o begin; to commence; to set in operation"). Then as now, in short, an information was "instituted" when it was *filed*—because that's when it was "enacted" or "established" as a legal document.

BGG also ignores the rest of the sentence in which the word "instituted" first appeared. *See K Mart Corp. v. Cartier, Inc.*, 486 U.S. 281, 291 (1988) ("In ascertaining the plain meaning of the statute, the court must look to the particular statutory language at issue, as well as the language and design of the statute as a whole."). But that sentence is critical to any understanding of what the word meant in 1790. As relevant here, that sentence provided: "[no] person [shall] *be prosecuted*, tried or punished for *any offence*, *not capital*, nor any fine or forfeiture under any penal statute, unless the indictment *or information for the same* shall be found or *instituted* within two years from the time of committing the offence." Crimes Act of 1790, ch. 9, § 32, 1 Stat. 112, 119 (emphases added). By using the terms "prosecuted" *and* "instituted" in the same sentence, Congress was indicating that the two verbs carried distinct meanings. *See McCarthan v. Dir. of Goodwill Indus.-Suncoast, Inc.*, 851 F.3d 1076, 1089 (11th Cir.

---

[7] There are admittedly times when judges should depart from the ordinary meaning of a statutory term. *See* SCALIA & GARNER at 69 ("Words are to be understood by their ordinary everyday meanings—unless the context indicates that they bear a technical sense."); *id.* at 320 ("A statute that uses a common-law term, without defining it, adopts its common law meaning."). But *BGG* never justifies a similar departure here—say, by showing that, at the founding, the word "institute" was commonly understood as a technical term of art or that it bore some unique, common-law meaning.

2017) ("When Congress uses 'different language in similar sections,' we should give those words different meanings."); *see also S.E.C. v. McCarthy*, 322 F.3d 650, 656 (9th Cir. 2003) ("It is a well-established canon of statutory interpretation that the use of different words or terms within a statute demonstrates that Congress intended to convey a different meaning for those words."). And, in 1790 (as now), the word "prosecute" meant "[t]o pursue," "[t]o continue," or "to carry on." 1 SAMUEL JOHNSON, A DICTIONARY OF THE ENGLISH LANGUAGE (6th ed. 1785). Again, then, we see in the two definitions of the time a key distinction—with "institute" signaling *only* the birth of something, while "prosecute" encompasses some portion of its life (its pursuit or continuation).

Fairly read, moreover, the original version of this sentence eviscerates *BGG*'s central contention—which was that, at the founding, the government didn't charge felonies by information. *See BGG* at 13–14. As the original statute of limitations makes pellucid, however, Congress *expressly* contemplated that the government could institute the "information for the same"—that is, for *any* non-capital offenses (felonies included). It thus isn't the case—as *BGG* suggested—that, in 1790, an "instituted" information *couldn't* have included a waiver-less information.

*BGG*'s construction faces still another problem—this one chronological: The United States didn't ratify the Fifth Amendment—which enshrined the individual's right to be charged by indictment for a "capital, or otherwise infamous crime"—until 1791, one year *after* Congress passed the Crimes Act of 1790 (the Act in which our statute of limitations first appeared). *See* Mark Kadish, *Behind the Locked Door of an American Grand Jury: Its History, its Secrecy, and its Process*, 24 FLA. ST. L. REV. 1, 11 n.81 (1996) (citing SARA SUN BEALE & WILLIAM C. BRYSON, GRAND JURY LAW AND PRACTICE § 1.4 (1986)). When Congress voted on the statute of limitations, in other words, this now-established right to a grand jury proceeding didn't exist. This chronology only further underscores what the text of the Act has already shown us: that, in 1790, an information *could* be "instituted" for any non-capital crimes (felonies included).

To parry the thrust of this problem, *BGG* points to a constitutional amendment John Hancock proposed in 1788—through which Hancock (as president of the Massachusetts Ratifying Convention) had presaged the later Fifth Amendment right to an indictment.[8] Shielding itself behind Hancock's proposal, *BGG* "infers" that "the drafters of the statute of limitations in the Crimes Act of 1790 contemplated that felony charges would only be brought by indictment, while lesser offenses may be brought by way of information." *BGG* at 16. But that has it precisely backwards. The information was a well-known—if controversial—aspect of criminal procedure at common law. *See* 9 W. HOLDSWORTH, A HISTORY OF ENGLISH LAW 236 (3d ed. 1926) (explaining that the "criminal information is almost as old as the indictment; and, like it, it has been affected by the course of the political and constitutional history of the English state"). And, as *BGG* recognized, the Fifth Amendment—which encapsulated Hancock's proposal—was not ratified until 1791. As a result, in 1790—the year that matters to us—the practice of charging felonies by information was still very much alive.

Despite these gaps in the textual analysis, we'll assume that *BGG* was right about the meaning of the verb "instituted" in 1790. Even with this assumption, though, *BGG*'s analysis falls short, because we aren't using the 1790 version of the statute of limitations to resolve our case. In fact, Congress has revised the original statute of limitations many times over the years. And, in evaluating *BGG*'s position that Congress *couldn't* have imagined a felony information, we should focus on any revisions that post-date the Federal Rules of Criminal Procedure. That's because those Rules—which took effect in 1946—*did* (and still do) allow defendants to waive their right to an indictment in felony

---

[8] Hancock's proposal read as follows: "[N]o person shall be tried for any Crime by which he may incur an infamous punishment or loss of life until he be first indicted by a Grand Jury, except in such cases as may arise in the Government & regulation of Land & Naval forces." *Id.*

cases. *See* FED. R. CRIM. P. 7 (1946 adoption).[9] And, since 1946, Congress has amended the statute of limitations four times. *See* Act of June 25, 1948, ch. 645, 62 Stat. 828 (changing the limitations period from five to three years and adding exceptions for certain crimes); Act of Sept. 1, 1954, ch. 1214, § 12(a), formerly § 10(a), 68 Stat. 1145 (changing the limitations period back to five years); Act of Sept. 26, 1961, § 12(a), 75 Stat. 648 (changing the effective date of the amendment); Act of Apr. 30, 2003, § 610, 117 Stat. 692 (adding an exception for certain offenses). Each time, Congress was unquestionably aware that, under Rule 7 of the Federal Rules, defendants in felony cases *could* waive their right to an indictment. Whatever Congress understood in 1790, then, it just isn't at all true that the felony information was a mystery to the post-1946 Congresses—and those are the Congresses we *should* be relying on here.

But that's not the end of our story. The Seventh Circuit, remember, issued its decision in *Burdix-Dana* in 1998. And several federal courts cited that opinion approvingly between 1998 and 2003 (when Congress amended the statute of limitations for the last time). *See United States v. Thompson*, 287 F.3d 1244, 1250 (10th Cir. 2002) (relying on *Burdix-Dana* to determine when an indictment is properly "found" under § 3282); *see also United States v. Lewis*, 2003 WL 1193256, at *1 (N.D. Ill. Mar. 11, 2003) (citing *Burdix-Dana* with approval); *United States v. Hsin-Yung*, 97 F. Supp. 2d 24, 28 (D.D.C. 2000) (same). In fact, even before *Burdix-Dana*, at least one district court had held that a waiver-less information was "instituted" when it was filed. *See United States v. Watson*, 941 F. Supp. 601, 603–04 (N.D.W. Va. 1996) (holding that "an information is 'instituted' when it is filed with the clerk of court, and further that the information charging Watson was 'instituted,' within the meaning of 18 U.S.C. § 3282, when it was filed with the Court's clerk on May 30, 1996," even though the information was

---

[9] Even before 1946, some courts had concluded that "the provision of the Fifth Amendment requiring an indictment in capital or other infamous cases creates a personal privilege which the defendant may waive." *United States v. Gill*, 55 F.2d 399, 403 (D.N.M. 1931); *cf.* George H. Dession, *The New Federal Rules of Criminal Procedure: II*, 56 YALE L.J. 197, 205 (1947) ("The provision in Rule 7(b) providing for waiver of indictment has long been recommended.").

waiver-less). Notably, during that same period, *no court* criticized *Burdix-Dana* or called its holding into question.[10]

As we've said, in 2003, Congress amended § 3282 for the last time. *See* Act of Apr. 30, 2003, § 610, 117 Stat. 692 (adding an exception to the statute of limitations for certain offenses). In doing so, Congress elected—just as it had for decades—*not* to alter, amend, or delete the phrase "information is instituted" *in any way. See id.* As the Supreme Court has explained, "Congress is presumed to be aware of an administrative or judicial interpretation of a statute and to adopt that interpretation when it re-enacts a statute without change." *Lorillard v. Pons*, 434 U.S. 575, 580 (1978); *see also Keene Corp. v. United States*, 508 U.S. 200, 212 (1993) ("[W]e apply the presumption that Congress was aware of these earlier judicial interpretations and, in effect, adopted them."). All of which is to say that, given Congress's implicit adoption of *Burdix-Dana*'s central premise, we'll adhere to the crux of the Seventh Circuit's decision in our case.[11] The Government, in short, satisfied the strictures of § 3282 by

---

[10] Indeed, the 1999 edition of the foremost treatise on federal practice included this insight: "[t]he filing of an information has . . . been held sufficient to meet the requirements of a statute of limitations concerning the offense charged even though the defendant did not waive her right to an indictment." 1 CHARLES A. WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 122 (West 3d ed. 1999). In saying this, the treatise cited only one case: *Burdix-Dana. Id.*

[11] Although Sanfilippo doesn't cite *Jaben v. United States*, 381 U.S. 214 (1965), we note that, in that case, the Supreme Court considered a *different* statute of limitations that governs tax offenses. That statute provided that, "[w]here a complaint is instituted before a commissioner of the United States within the [six-year] period above limited, the time shall be extended until the date which is 9 months after the date of the making of the complaint before the commissioner of the United States." *Id.* at 215–16 (quoting 26 U.S.C. § 6531). The Court concluded that, "to initiate the time extension, [the complaint] must be adequate to begin effectively the criminal process prescribed by the Federal Criminal Rules. It must be sufficient to justify the next steps in the process—those of notifying the defendant and bringing him before the Commissioner for a preliminary hearing." *Id.* at 220.

*Jaben* is inapposite here because it involved a different statute—which, unlike § 3282, *explicitly* required that the complaint be "instituted *before a commissioner of the United States.*" *Id.* at 215 (emphasis added); *see also Burdix-Dana*, 149 F.3d at 742 n.1 ("*Jaben* did consider the meaning of the term 'institute,' but in the context of a different statute governing criminal complaints, not informations. The considerations that led the Court to its conclusion in *Jaben* were specific to the statute under review, and therefore the case is distinguishable from the one we currently address."); *United States v. Holmes*, 2020 WL 6047232, at *9 (N.D. Cal. Oct. 13, 2020) ("[T]he term 'institute' must be read in context, and *Jaben* involved statutory language that is materially different from that at hand.").

instituting the Information *before* the statute of limitations expired.

## II.   THE SAVINGS CLAUSE

At the same time, we can't ignore the fact that the Information *was* defective. Rule 7, after all, permits the Government to "prosecute[ ]" a defendant "by information" only if the defendant "waives prosecution by indictment." And, as we've shown, to "prosecute" means "[t]o commence *and* carry out" or to "[t]o institute *and* pursue a criminal action against (a person)." BLACK'S LAW DICTIONARY (11th ed. 2019) (emphases added). By allowing the case against Sanfilippo to proceed by waiver-less information for some three months, the Government arguably "pursued" the "criminal action against [him]" and (we think) violated the dictates of Rule 7.

That's no big deal in our case, the Government says, because the "savings clause" in 18 U.S.C. § 3288 allowed it to "delay[ ] up to six months after the Information was dismissed to obtain that Indictment." Response at 10. That savings clause looks like this:

> Whenever an indictment or information charging a felony is dismissed *for any reason* after the period prescribed by the applicable statute of limitations has expired, *a new indictment may be returned in the appropriate jurisdiction within six calendar months of the date of the dismissal of the indictment or information* . . . or, if no regular grand jury is in session in the appropriate jurisdiction when the indictment or information is dismissed, within six calendar months of the date when the next regular grand jury is convened, which new indictment shall not be barred by any statute of limitations. This section does not permit the filing of a new indictment or information where the reason for the dismissal was the failure to file the indictment or information within the period prescribed by the applicable statute of limitations, or some other reason that would bar a new prosecution.

§ 3288 (emphases added). Sanfilippo doesn't grapple with this statute or, really, any of the

---

In any event, there are good reasons to read *Jaben*, not as "an extension of the statute of limitations, but [as] a policy statement designed to give leeway for the convenience of the government in exigent circumstances." *United States v. Sharma*, 2016 WL 2926365, at *3 (S.D. Tex. May 19, 2016). Neither of our litigants has espoused *Sharma*'s rationale—nor do we. For what it's worth, though, we do think that *Sharma* would support the Government's position here. Whereas the government in *Sharma* couldn't point to the kinds of exigent circumstances that might justify tolling the statute of limitations, *see id.*, the Covid-19 pandemic would have entitled the Government in our case to just the sort of additional "leeway" *Sharma* anticipated.

Government's arguments with respect to it. *See generally* Reply. He, in fact, addresses § 3288 only obliquely in his Reply by block-quoting from *BGG*, where the district court supposed that Congress "intended § 3288 . . . to toll the limitations period at § 3282 for dismissed informations where those informations comported with Rule 7(b)." *BGG* at 18.

For this proposition, though, *BGG* relied only on a single piece of legislative history.[12] In arriving at its conclusion that § 3288 doesn't mean what it plainly appears to mean, *BGG* ignored the fact that the law doesn't make its six-month grace period contingent on the extent to which the information comports with Rule 7(b). To the contrary, the statute makes the grace period available "whenever an . . . information charging a felony is dismissed *for any reason*," § 3288 (emphasis added)— which, of course, would include a situation like ours in which the information fails to comply with Rule 7(b), *see Laperriere v. Vesta Ins. Grp., Inc.*, 526 F.3d 715, 726 (11th Cir. 2008) ("The term 'any' in a statute has a 'broad,' 'powerful,' and 'expansive' meaning; it does not mean 'some' or 'all but a few,' but instead means 'all.'" (cleaned up)). Because the grand jury indicted Sanfilippo "within six calendar months of the date of the dismissal of the . . . information," the Indictment was timely under § 3288's savings clause.

It's true that the savings clause includes two exceptions: the Government cannot proceed with a new indictment if the "reason for the dismissal of the [earlier] information was [1] the failure to file the . . . information within the period prescribed by the applicable statute of limitations, or [2] some

---

[12] That legislative nugget is a letter from then-Attorney General Robert F. Kennedy, which was tucked away in a Senate report. Citing that letter—and nothing else—*BGG* concluded that "[t]he legislative history of § 3288 indicates that although the statute permits tolling of the limitations period specifically for felonies, Congress did not intend to create a means to bypass the statute of limitations altogether by filing a defective information." *BGG* at 18. It's hard to think of a piece of legislative history that carries less weight. No one, after all, elected General Kennedy, who (we hasten to add) worked in the *executive*, not the legislative, branch. In either event, we needn't quibble with *BGG* over the probative value of General Kennedy's letter because we reject any interpretive methodology that elevates legislative history over the unambiguous text of the statute itself. *See* SCALIA & GARNER at 56 ("[T]he purpose [of a statute] must be derived from the text, not from extrinsic sources such as legislative history or an assumption about the legal drafter's desires.").

other reason that would bar a new prosecution." § 3288. But Sanfilippo hasn't invoked these exceptions, *see generally* Motion; Reply, so he's waived any argument that they save him here, *see, e.g.*, *McDonald v. City of Pompano Beach, Fla.*, 2021 WL 3741646, at *21 (S.D. Fla. Aug. 24, 2021) ("Arguments not properly presented in a party's initial brief or raised for the first time in the reply brief are deemed waived." (quoting *In re Egidi*, 571 F.3d 1156, 1163 (11th Cir. 2009))).

In either event, any reliance on these exceptions would have been futile. Starting with the first, there's no dispute that the Government filed the Information "within the period prescribed by the applicable statute of limitations." The Information was docketed on October 23, 2020—*i.e.*, less than five years after Sanfilippo committed the alleged crimes. *See* Information (charging eight criminal acts that occurred between October 28, 2015 and November 4, 2015). As for the second exception, Judge Dimitrouleas dismissed the Information under Rule 48(a) *without prejudice* and without objection from Sanfilippo. *See* Order of Dismissal, *United States v. Sanfilippo*, No. 20-cr-60112-WPD (S.D. Fla. Feb. 26, 2020), ECF No. 5. That dismissal thus didn't "bar" a new prosecution. *See United States v. Matta*, 937 F.2d 567, 568 (11th Cir. 1991) (rejecting the argument that "the government's successful motion to dismiss his first indictment for escape from custody bars reprosecution for the same charge on a subsequent indictment. . . . An indictment will be dismissed without prejudice if the reason for dismissal does not go to the merits or demonstrate a purpose to harass"); *see also United States v. Liersch*, 2005 WL 6414047, at *2 (S.D. Cal. May 2, 2005) ("[A] dismissal under Rule 48(a) does not bar a new prosecution because the dismissal is without prejudice. Therefore, under the plain language of § 3288, that provision saves from the statute of limitations a superseding indictment that is filed within six months of the dismissal of an indictment pursuant to Rule 48(a)."). In our case, there's no indication—and Sanfilippo never suggests—that the Information's dismissal was "on the merits" or that it otherwise demonstrated some "purpose to harass." *Matta*, 937 F.2d at 568. As we've said, the Information was filed only because the Chief Judge of our court had disbanded the grand jury—

making an indictment impossible. Once the grand jury reconvened, the Government properly sought and obtained an indictment. Harassment, in short, has nothing to do with it.

Beyond these two exceptions, the circuit courts have held that, even under the savings clause, a late-filed indictment can't substantially broaden or amend the timely (but now-dismissed) information. *See United States v. Italiano*, 894 F.2d 1280, 1282 (11th Cir. 1990) ("A superseding indictment brought after the statute of limitations has expired is valid so long as the original indictment is still pending and was timely and the superseding indictment does not broaden or substantially amend the original charges."); *see also United States v. McMillan*, 600 F.3d 434, 444 (5th Cir. 2010) ("A superseding indictment that is filed while the original indictment is pending will relate back to the original indictment, and therefore also be timely, unless it broadens or substantially amends the charges."). Again, Sanfilippo's waived any argument that the Indictment amends or broadens the Information in any material way. *See generally* Motion; Reply; *see also McDonald*, 2021 WL 3741646, at *21 (discussing waiver). Waiver aside, though, the argument would have failed anyway because the Information and the Indictment outline the very same facts, charge exactly the same crimes, and allege that those crimes occurred on precisely the same dates. *Compare* Information (alleging a sham investment scheme that occurred between October 28, 2015 and November 4, 2015 and charging four counts of wire fraud and four counts of structuring), *with* Indictment (same). Indeed, we don't think it a stretch to say that the two documents are virtually identical.

Sanfilippo did raise one point that, at first glance, gave us some pause. In his original Reply, he averred that the Government had failed to notify him about the Information. *See* Reply at 2 (suggesting that "the Government filed an information, let it sit, never sought a warrant, and dismissed it all without notifying the Defendant"). Because Sanfilippo didn't elaborate—and since he'd raised the point only in his Reply—we ordered supplemental briefing on this issue. *See* Order Requiring

Supplemental Briefing [ECF No. 16].[13]

The Government responded first and argued that notice isn't necessary under § 3282(a). *See* Government's Supplemental Brief at 3–5. Even if it were, the Government insisted, Sanfilippo *did* receive notice. As the Government sees things, Sanfilippo got *constructive* notice on October 23, 2020, when the Information was filed, and *actual* notice on November 2, 2020, when two FBI agents handed him the Information together with a notice letter. *Id.* at 2–3, 8. Sanfilippo, for his part, didn't contest the Government's representation that the FBI agents had handed him the Information. *See* Defendant's Supplemental Brief at 2; *see also id.* (noting that "[s]omehow the FBI was able to hand deliver a notice to [Sanfilippo]"). He also reluctantly (though perhaps incorrectly) conceded that § 3282(a) "does not appear to require notice to the Defendant that an Information has been filed against him." *Id.*; *but see Italiano*, 894 F.2d at 1283 ("Notice to the defendant is the central policy underlying the statutes of limitation."). In any event, having admitted that he received a copy of the Information—and having failed to contend that notice was required—Sanfilippo has forfeited any notice arguments he could've raised. *See McDonald*, 2021 WL 3741646, at *21.

The Indictment, in sum, was timely filed, and Sanfilippo fits into neither of the savings clause's narrow exceptions.

## III.    PRE-INDICTMENT DELAY

In his Supplemental Brief, Sanfilippo also advances two *new* claims—claims he'd never raised either in his original Motion or in Reply. Since he could have asserted both claims in his Motion, he's unambiguously waived them here. *See In re Egidi*, 571 F.3d at 1163 ("Arguments not properly presented

---

[13] In that Order, we required the parties to address three questions: (1) "whether notice to the defendant is required for the government to toll the statute of limitations under § 3282(a) with an un-consented-to information and/or whether notice is required for the subsequently filed indictment to 'relate back' to that information"; (2) "assuming notice is required, whether actual or constructive notice suffices"; and (3) "whether an evidentiary hearing is necessary or appropriate to resolve factual disputes regarding Sanfilippo's notice." Order Requiring Supplemental Briefing at 2.

in a party's initial brief or raised for the first time in the reply brief are deemed waived."). We'll take a moment to address them anyway, though, because—waiver aside—both are meritless.

Sanfilippo's first new claim is that "notice of the commencement of a prosecution is required when a Defendant's whereabouts are known." Defendant's Supplemental Brief at 1–2. And, he says, "the subsequent dismissal was not noticed, and [ ] the case was sealed and appeared in 'fugitive status,' although somehow the FBI was able to hand deliver a notice to the fugitive." *Id.* at 2. This argument makes little sense. For one thing, the Information wasn't sealed; only the *arrest warrant* was. *See* Sealed Arrest Warrant, *United States v. Sanfilippo*, No. 20-cr-60112-WPD (S.D. Fla. Oct. 23, 2020), ECF No. 2. Even if it had been, it's not clear why that would matter. Again, Sanfilippo had *actual* notice of the Information soon after it was filed, so he could have moved to dismiss it himself or objected to the Government's Rule 48 dismissal. *See Burdix-Dana*, 149 F.3d at 743 n.3 ("Burdix-Dana argues that filing the information does not necessarily require notice to the person charged therein; thus it is possible that a person could fail to assert her rights not for lack of diligence, but for lack of notice. This issue is not relevant here because in this case Burdix-Dana did have notice of the charges pending against her.").

The only authority Sanfilippo cites in support of this argument is *United States v. Castellano*, 610 F. Supp. 1359 (S.D.N.Y. 1985)—an 85-page omnibus order that resolved 21 issues and arose out of a 78-count RICO indictment against 24 defendants, *id.* at 1378. Sanfilippo decided to offer this gem of a case without a single quotation, parenthetical explanation, or (even) a pincite. Having rifled through the opinion—no easy task—we stumbled upon a section addressing certain statute-of-limitations issues. *See id.* at 1379–88. But that section—which comprised 10 of the opinion's 85 pages—involved *several* subsidiary questions and motions, all implicating the complicated interrelationship between multiple counts and a large number of co-conspirators. *Id.*

Trying our best to divine Sanfilippo's purpose, we assume that he's cited *Castellano* in the hope that we might find a section titled "pre-indictment delay," in which the court explained that, "[t]o establish a violation of the due process clause" for unjustified delay, "a defendant must carry the heavy burden of showing both actual prejudice to the defendant's right to a fair trial and unjustifiable Government conduct"—a high bar that, *Castellano* held, the defendants in that case had failed to meet. *Id.* at 1385. If that's the doctrine Sanfilippo was trying to invoke, however, he's neither recited the appropriate standard nor tried to satisfy it. *See generally* Defendant's Supplemental Brief. He's thus doubly waived the claim—first by not advancing it in his Motion and then again by failing to make any legal arguments in support of it. *See, e.g.*, *Hamilton v. Southland Christian Sch., Inc.*, 680 F.3d 1316, 1319 (11th Cir. 2012) ("[T]he failure to make arguments and cite authorities in support of an issue waives it.").

Nor could he have shown pre-indictment delay even if he'd tried. To establish a due-process violation arising from the government's pre-indictment delay, a defendant must show "(1) actual prejudice to [his] defense from the delay; and (2) that the delay resulted from a *deliberate design* by the government to gain a tactical advantage." *United States v. Thomas*, 62 F.3d 1332, 1339 (11th Cir. 1995) (emphasis added). Whatever we think of the first element, Sanfilippo plainly fails the second. The Government was delayed in seeking its indictment, not because of any deliberate stratagem, but because a global pandemic that killed hundreds of thousands of Americans forced our Court to shut down the grand jury. Sanfilippo, in fact, appears to concede this point when he blames the Government's delay, not on some purposeful design, but on its negligence (in his words, its "lack of due diligence," Defendant's Supplemental Brief at 2). Because governmental indolence isn't enough to establish pre-indictment delay, we reject Sanfilippo's *first* new argument on the merits.

Sanfilippo also asks for an evidentiary hearing, not to clarify whether he received notice of the Information, but to address a *second* new question: whether the Government filed the Information in

October 2020 because of a "complete lack of due diligence and self-created exigent circumstances." *Id.* at 2. In Sanfilippo's view, the Government *could have* instituted the case much sooner. As support for this second new claim, he appends a 2018 FBI report, which (he says) laid out all the facts that were ultimately included in the Information. *Id.* He insists that the FBI drafted a final memo in 2019—and that, given the facts that were included in that memo, there was no need for the Government to wait until October 2020 to institute the case. *Id.*

To bolster this second new claim, Sanfilippo cites only *United States v. Porth*, 426 F.2d 519 (10th Cir. 1970),[14] where the court rejected the defendant's claim that his indictment was untimely under the three-year statute of limitations set out in 26 U.S.C. § 6531, *id.* at 521–22. In so holding, the court found that the defendant's willful conduct moved him into the "six-year exception to the general three-year statute of limitations of § 6531." *Id.* And, the court noted, the original indictment had been timely, it had been dismissed for technical reasons, and it had been properly re-filed under § 3288. *Id.* As this summation should make plain, we don't think *Porth*—which rejected a defendant's statute-of-limitations contentions under a different, tax-related statute—helps Sanfilippo at all. If his argument is that the Government's pre-indictment delay was improper, he's (again) failed to recite the standard or explain how it applies here. *See Hamilton*, 680 F.3d at 1319 ("[T]he failure to make arguments and cite authorities in support of an issue waives it."). Either way, as we've said, his request that the Indictment be dismissed for pre-indictment delay fails on the merits.

---

[14] As with the first new claim, Sanfilippo refuses to assist the Court by including any quotations, parentheticals, or pincites.

## IV.    EQUITABLE TOLLING

The Government also invokes the doctrine of equitable tolling. *See* Response at 11–14. In Reply, Sanfilippo says very little about this issue—other than to cite an article in which several lawyers cautioned courts against issuing "blanket orders" that have the effect of tolling all statutes of limitations in criminal cases during the pandemic. *See* Reply at 2 n.1 (citing Abbe David Lowell *et al.*, *Problems with Federal Courts Tolling Statutes of Limitations*, LAW 360 (May 7, 2020)). Sanfilippo also says that, at a hearing, the Government promised *not* to rely on equitable tolling. *Id.* But we've never held a hearing on this Motion, *see generally* Docket—and Sanfilippo doesn't point us to any transcript from which we might verify this assertion, *see generally* Reply.

Beyond that, Sanfilippo never argues that equitable tolling is unavailable in cases subject to § 3282, nor does he explain why it would be inappropriate here. *See generally id.* And (we note) there is some support for the Government's position. In *United States v. Xavier*—a case that's very similar to ours—Judge Middlebrooks explained that courts have (1) equitably tolled other criminal statutes of limitations, and (2) tolled § 3282 "in cases involving indictments which were properly sealed within the statutory period of limitations, but then unsealed after expiration of that period." *United States v. Xavier*, Case No. 20-cr-80054-DMM (S.D. Fla. Sept. 8, 2021), ECF No. 111 at 6 (collecting cases). Having thus determined that equitable tolling is generally available in cases governed by § 3282, Judge Middlebrooks found that the statute of limitations in that case had been tolled. In so holding, Judge Middlebrooks cited two factors: (1) the unprecedent ways in which the pandemic had disrupted judicial functions and (2) the government's diligence in obtaining the indictment soon after the grand juries reconvened. *Id.*

We needn't resolve this question here, though, because—as we've said—the Government properly filed the Information before the statute of limitations expired and then obtained the Indictment within six months of the Information's dismissal. We're persuaded that holding off on this issue is the wiser course—especially given the lack of controlling authority on the availability of equitable tolling in this context and the general reticence courts have shown to tolling criminal limitations periods. *See United States v. Atiyeh*, 402 F.3d 354, 367 (3d Cir. 2005) ("Absent a showing of intentional inducement or trickery by the defendant, a statute of limitations should be tolled only in the rare situation where equitable tolling is demanded by sound legal principles as well as the interest of justice." (cleaned up)); *see also Rosecan*, 2021 WL 1026070, at *5 ("Having resolved Defendant's Motion to Dismiss through a plain reading of the statutory text under section 3282, as well as analysis of Rule 7(b), the Court need not reach the parties' arguments regarding equitable tolling in light of the ongoing pandemic.").

\*\*\*

Having carefully considered the parties' briefs, the record, and the governing law, the Court hereby **DENIES** Sanfilippo's Motion to Dismiss the Indictment [ECF No. 9].

**DONE AND ORDERED** in Fort Lauderdale, Florida this 16th day of November 2021.

_____
**ROY K. ALTMAN**
**UNITED STATES DISTRICT JUDGE**

cc: counsel of record